IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CT-3325-FL

| | | |
|---|---|---|
| RUFUS MOONEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DEAN LOCKLEAR, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion for summary judgment (DE 51) pursuant to Federal Rule of Civil Procedure 56. The motion was briefed fully and in this posture the issues raised are ripe for ruling.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint August 29, 2022, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendant Dean Locklear, the assistant warden of the Scotland Correctional Institution, failed to protect him from an assault, in violation of the Eighth Amendment to the United States Constitution. As relief, plaintiff seeks compensatory and punitive damages, and various forms of injunctive relief.

Following a period of discovery, and in accordance with the court's case management order, defendant filed the instant motion for summary judgment. Defendant argues that the undisputed evidence shows he was not deliberately indifferent to plaintiff's safety, and that he is entitled to qualified immunity. In support of the motion, defendant relies upon memorandum of

law, statement of material facts, and appendix of exhibits thereto comprising the following: 1) defendant's verified responses to plaintiff's discovery requests; 2) plaintiff's Department of Adult Corrections ("DAC") custody records; and 3) plaintiff's request for protective custody.

Plaintiff responded in opposition to the motion, relying on memorandum of law, opposing statement of facts, and appendix of exhibits comprising the following: 1) DAC investigation report dated November 24, 2020; 2) administrative grievances filed by plaintiff; 3) plaintiff's disciplinary records; 4) case manager notes responding to plaintiff's requests; 5) documentation from plaintiff's custody control review; and 6) DAC policy and procedure titled "conditions of confinement."

## STATEMENT OF FACTS

Except as otherwise noted below, the court recounts the facts in the light most favorable to plaintiff.[1] Plaintiff was housed at the Scotland Correctional Institution ("Scotland C.I.") during the relevant time period. (Pl's Mem. (DE 57) at 3).[2] On October 4, 2021, plaintiff "was assaulted by three . . . inmates and severely beaten with a sock full of batteries." (Id.). In the year leading up to this incident, plaintiff "repeatedly told prison officials that he was in danger of being killed or [beaten] by prisoners who were extorting him." (Id.).

In particular, plaintiff requested protective custody in November 2020, and prison officials

---

[1] The factual background is derived primarily from plaintiff's memorandum of law (DE 57) and statement of material facts (DE 58), both of which are "sworn and ascribed" before a notary pursuant to North Carolina law. (See DE 57 at 9; DE 58 at 6). The court construes these filings as affidavits opposing summary judgment. See Jones v. Solomon, 90 F.4th 198, 206 n.7 (4th Cir. 2024) (concluding that a "notarial certificate for an oath or affirmation pursuant to North Carolina Law" is sufficient to construe filing as opposing affidavit at summary judgment); N.C. Gen. Stat. § 10B-43(a); N.C. Gen. Stat. § 10B-3(2)(C), (14)(c) (describing requirements for notarial act to satisfy "vow of truthfulness on penalty of perjury").

[2] Throughout this order, page numbers in citations to documents in the record are to the page number specified in the footer of the document supplied by the court's case management / electronic case filing (CM/ECF) system for the docket entry (DE) and not the page number, if any, showing on the face of the underlying document.

2

immediately placed him in preliminary protective custody, which is also known as "restrictive housing for administrative purposes" or "RHAP." (See id. at 3; Investigation Report (DE 59-1) at 2). DAC officials then conducted investigation into plaintiff's allegations that he was being extorted and threatened by gang members. (See Investigation Report (DE 59-1) at 2; Pl's Mem. (DE 57) at 3). At the conclusion of same, however, officials determined that there was insufficient evidence to support plaintiff's request for transfer to long-term protective custody. (Investigation Report (DE 59-1) at 2). In his capacity as assistant warden of the Scotland C.I., defendant Locklear approved the findings in the investigation report. (Id. at 3).

With his request for protective custody denied, plaintiff faced the choice of returning to the general population unit of the prison, where he feared for his safety, or refusing direct orders to move to general population and subjecting himself to disciplinary charges. (See Pl's Mem. (DE 57) at 3). Plaintiff chose the latter option for several months, and as a result he was charged with disciplinary infractions for refusing direct orders. (Id.; see also Disciplinary Records (DE 59-3, 59-5, 59-7)). In the ensuing disciplinary proceedings, plaintiff lost sentencing credits and other privileges. (Pl's Mem. (DE 57) at 3; Disciplinary Records (DE 59-3, 59-5, 59-7)). Prison officials also placed plaintiff on "restrictive housing for disciplinary purposes" and "restrictive housing for control purposes," which are punitive placements relative to RHAP or protective custody. (Pl's Stmt. (DE 58) at 2–4; Conditions of Confinement Policy (DE 59-10) at 3).

On February 5, 2021, plaintiff filed a grievance alleging that he was being forced to return to general population despite his fears for his safety (hereinafter, "safety grievance"). (DE 59-6 at 3). Specifically, plaintiff stated that gang members had threatened to kill, stab, and beat him, and that he was "in fear [for] my life" in general population. (Id.). Plaintiff also mentioned that

3

one of the inmates who had threatened him recently was demoted to close custody due to his involvement in four assaults, and that he had evidence to show that the gang members were extorting money from him. (Id.). He requested transfer to another facility. (Id.).

In response to the safety grievance,[3] the responding officer relied on the prior investigation in which DAC officials found insufficient evidence to support plaintiff's complaints about his risk in general population. (Id. at 4).[4] The responding officer also noted that plaintiff refused several direct orders to return to general population, and that he had refused to leave restrictive housing. (Id.). Plaintiff appealed the initial response to the safety grievance to the "step two" level, but defendant Locklear "agreed" with the step-one response and determined that further action would be taken. (Id. at 5). Ultimately, the initial response to the safety grievance was upheld at the final level of review before the inmate grievance resolution board. (Id. at 2).

Plaintiff returned to general population July 14, 2021. (Pl's Stmt. (DE 58) at 3). That same day, plaintiff told his case manager that he feared for his life based on the threats he had received from gang members and he requested transfer to another facility. (Id. at 3; Case Manager Note (DE 59-8) at 3). The case manager explained that plaintiff was not eligible to transfer at that time, but that he should report any safety concerns to custody staff. (Case Manager Note (DE 59-

---

[3] Pursuant to DAC policy, grievances are addressed through a three-step process, which begins at "step one" review by officials in the inmate's housing unit. (See Safety Grievance (DE 59-6 at 3–4). If dissatisfied with the step-one response, the inmate can appeal to step two, where the facility head or his designee reviews the grievance and the unit, step-one response. (Id. at 5). The final "step three" is appeal to the inmate grievance resolution board. (Id. at 2).

[4] The DAC step-one response to the safety grievance could be read to suggest that DAC officials conducted another investigation regarding plaintiff's safety concerns in response to this grievance, but the language is far from clear. (See DE 59-6 at 4). Moreover, the summary judgment record does not include any other evidence suggesting a second investigation was completed. In these circumstances, the court adopts the reading stated above which is more favorable to plaintiff.

4

8) at 3). Approximately one week later, plaintiff provided his case manager with two threatening letters that he had received from gang members. (Pl's Stmt. (DE 58) at 3–4; Case Manager Note (DE 59-8) at 4). The case manager provided this information to the unit sergeant. (Case Manager Note (DE 59-8) at 4). Finally, on July 26, 2021, plaintiff told his case manager that he feared retaliation from unspecified inmates, and the case manager again provided this information to custody staff. (See Case Manager Note (DE 59-8) at 5).

From late July until the October 4, 2021, assault, plaintiff did not request protective custody or inform staff that he feared for his safety. (See Case Manager Notes (DE 60-1) at 2). As noted above, three inmates assaulted plaintiff using a sock full of batteries on October 4. (Pl's Mem. (DE 57) at 3).

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).[5]

Only disputes between the parties over facts that might affect the outcome of the case

---

[5] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

6

Case 5:22-ct-03325-FL    Document 63    Filed 09/10/25    Page 6 of 11

B. Analysis

Plaintiff asserts that defendant failed to protect him from the October 4 assault. The Eighth Amendment to the United States Constitution proscribes "cruel and unusual punishments." U.S. Const. amend. VIII. Under the Eighth Amendment, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994); see Hudson v. Palmer, 468 U.S. 517, 526–27 (1984). "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). Under the first prong, "a prisoner must establish . . . a serious or significant physical or emotional injury" or that "he was incarcerated under conditions posing a substantial risk of serious harm." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015); Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014).

The deliberate indifference prong requires a showing that defendant knew of and disregarded an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837–38; Danser, 772 F.3d at 347. A plaintiff may establish deliberate indifference by producing direct evidence showing the prison official had actual knowledge of the risk and failed to protect him. Farmer, 511 U.S. at 842–43. As an alternative, "a prison official's subjective actual knowledge can be proved through circumstantial evidence" by showing that the risk was "obvious" and that the circumstances suggest the defendants must have known about it. Makdessi, 789 F.3d at 133; see also Farmer, 511 U.S. at 842. The official "must also have recognized that his actions were insufficient to mitigate the risk of harm to the inmate." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). However, "prison officials who actually knew of a substantial risk to inmate health or

safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844; Odom v. South Carolina Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003).

Here, defendant moves for summary judgment solely on the basis of the deliberate indifference prong. (Def's Mem. (DE 52) at 6). The court agrees that plaintiff fails to show a triable issue of fact as to this prong, although the court arrives at this result by a different path than defendant's principal argument.

Defendant primarily argues that plaintiff cannot establish deliberate indifference because plaintiff was allowed to remain in protective custody until he voluntarily transferred to general population in July 2021. (See generally Def's Mem. (DE 52)). But as defendant implicitly acknowledges on reply, this is not an accurate reading of the record. (See Def's Reply (DE 60) at 1). Plaintiff's request for protective custody was denied, and he was forced to choose between remaining in highly restrictive, punitive housing and continuing to lose sentencing credits, or returning to general population where he feared for his safety. (See Investigation Report (DE 59-1) at 1 (denying request for protective custody); Safety Grievance (DE 59-6) at 4 (confirming that plaintiff was punished for refusing to return to regular population); Disciplinary Records (DE 59-3, 59-5, 59-7) (same); Custody Review (DE 59-9) (showing plaintiff's placement in restrictive housing for control purposes)). To the extent defendant was responsible for this arrangement, the court cannot say that it represents a good faith effort to remedy plaintiff's risk of harm. See Koon v. North Carolina, 50 F.4th 398, 407 (4th Cir. 2022).

Nonetheless, defendant generally argues that plaintiff cannot show he was deliberately indifferent to the risk of harm and that he responded reasonably to any risk to plaintiff, and thus

8

the burden shifts to plaintiff to show a triable issue of fact as to these issues. See Celotex, 477 U.S. at 32; (Def's Mem. (DE 52) at 6). And plaintiff understood this burden, where he specifically addresses defendant's knowledge of the risk and his response to same in his opposition materials. (Pl's Mem. (DE 57) at 3; Pl's Stmt. (DE 58) at 1–2).

Turning to this issue, defendant's involvement in the response to plaintiff's concerns was limited. First, defendant approved the investigation report in which DAC officials determined there was insufficient evidence to support transferring plaintiff to protective custody. (Investigation Report (DE 59-1) at 3). But this document shows that prison officials "immediately/safely removed" plaintiff from general population and gave him the opportunity to complete the protective custody request forms. (Id. at 1). Subordinate officials then promptly completed the investigation and determined plaintiff's concerns lacked evidentiary support. (Id.). Importantly, there is nothing in the record suggesting these officials conducted a substandard or otherwise perfunctory investigation, or that defendant was aware of same. In the absence of such evidence, plaintiff cannot show that the investigation itself represented an unreasonable response to the plaintiff's risk of harm. See Ford v. Hooks, 108 F.4th 224, 230 (4th Cir. 2024) (concluding warden of correctional facility was not liable on a failure to protect claim where she ordered an investigation and plaintiff failed to show that she was aware that her actions were insufficient to mitigate the risk of harm); Koon, 50 F.4th at 407 (explaining "good faith efforts" to remedy the problem typically preclude finding of deliberate indifference).

Second, plaintiff notes that defendant affirmed the step-one unit response to the safety grievance filed in February 2021. (Safety Grievance (DE 59-6) at 5). As set forth above, plaintiff complained in the safety grievance that he was being forced to return to general population

9

despite his fears for his safety and that gang members had threatened to stab and kill him. (Id. at 3). Plaintiff also noted that he could provide evidence showing the gang members were extorting money from him, and that one of the inmates recently was involved in four assaults. (Id.).

In the step-one response, a DAC official explained that the protective custody investigators concluded that plaintiff's fears for his safety lacked evidentiary support, and thus plaintiff's refusals to return to general population constituted disciplinary infractions that resulted in plaintiff's placement on restrictive housing for control purposes. (Id. at 4). After plaintiff appealed to step two, defendant reviewed the response and declined to take further action, stating "I agree with the step one response." (Id. at 5).

This response does not standing alone suggest deliberate indifference to plaintiff's safety. As noted above, defendant had no information suggesting the protective custody investigation was inadequate or deficient, and thus he was entitled to rely on investigators' determinations that the concerns expressed by plaintiff lacked evidentiary support. See Ford, 108 F.4th at 230; cf. Iko, 535 F.3d at 242 (noting general rule that nonmedical staff may rely on decisions of medical providers).

To the extent plaintiff's argument is that defendant should have ordered another investigation on the basis of the allegations in the grievance,[6] the court cannot agree that this shows deliberate indifference to plaintiff's safety. Plaintiff did not suggest in the safety grievance that he received additional threats after the November 2020 investigation. (See Safety Grievance (DE 59-6) at 3). In any event, plaintiff offers no evidence suggesting that defendant knew, at the

---

[6] As noted supra n.4, the step-one response could be read to suggest that, in fact, another investigation was ordered. (See DE 59-6 at 4). But given this uncertainty, the court assumes that the investigation referenced here is the first investigation conducted in November 2020. (Investigation Report (DE 59-1)).

time he completed the step-two response, that the prior investigation was inadequate to respond to the issues raised. See Ford, 108 F.4th at 230; Koon, 50 F.4th at 406 ("It is not enough simply to point to what could or should have been done. That is the language of negligence. Deliberate indifference requires a conscious choice to ignore something.").

Beyond these two documents, plaintiff offers no evidence that defendant played any role in the response to plaintiff's allegations that he feared for his safety. Moreover, and as defendant emphasizes, there is no evidence that defendant was aware of any new threats to plaintiff after he filed the February 2021 safety grievance, including the three-month period between plaintiff's return to general population in July 2021 and the October assault. (See (Pl's Stmt. (DE 58) at 3 (recounting that plaintiff returned to general population on July 14, 2021); Safety Grievance (DE 59-6) at 4 (showing safety grievance was received February 23, 2021)). Accordingly, plaintiff fails to show a genuine dispute of material fact as to the deliberately indifference prong, and defendant is entitled to judgment as a matter of law.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment (DE 51) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 10th day of September, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge